**EXHIBIT 3**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DEBRA LEBAKKEN, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

WEBMD, LLC,

     Defendants.

CIVIL ACTION

FILE NO.: 1:22-cv-0644-TWT

## DEFENDANT WEBMD, LLC'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure,

Defendant WebMD, LLC ("WebMD"), by and through its undersigned counsel,

hereby responds to Plaintiff's ("Plaintiff") First Set of Interrogatories (the

"Interrogatories") as follows:

### PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

WebMD's investigation of this matter is continuing and not complete.

WebMD has not yet answered Plaintiff's First Amended Complaint ("FAC") or

asserted any affirmative defenses due to WebMD's pending motion to dismiss the

FAC.  WebMD's objections and responses are made to the best of its current

knowledge, information, and belief.  WebMD's objections and responses are at all

Exhibit
0003

times subject to such additional or different information that discovery or further investigation might disclose.  WebMD will supplement its responses as required by the Federal Rules of Civil Procedure or by order of the Court.

WebMD objects to each separate interrogatory propounded by Plaintiff on the grounds set forth below. Each of these objections is incorporated into WebMD's responses to each of the interrogatories regardless of whether any particular objections are made with respect to a specific discovery request.  To the extent that any of these are repeated in response to specific interrogatories, those specific objections are provided because they are believed to be particularly applicable to the specific interrogatory and are not to be construed as a waiver of any of the general objections.

1.      WebMD's objections to the interrogatories are not intended as an admission that WebMD accepts or admits the existence of any facts or legal conclusions set forth or assumed by any individual interrogatory, or that such objection constitutes admissible evidence.

2.      WebMD generally objects to the definitions and instructions in the interrogatories and to the interrogatories themselves to the extent they impose obligations beyond or different from those permitted under the Federal Rules of Civil Procedure or the Local Rules of Court.

3.     WebMD generally objects to each interrogatory to the extent it seeks information not relevant to the parties' claims or defenses or otherwise not proportional to Plaintiff's needs in the case, while imposing an unwarranted and extreme burden and expense on WebMD in ascertaining and disclosing such information.

4.     WebMD generally objects to each interrogatory to the extent it seeks information that is not in the possession, custody or control of WebMD.

5.     WebMD generally objects to each interrogatory to the extent it seeks information that is more readily, conveniently, or efficiently sought from non-parties to the action.

6.     WebMD generally objects to each interrogatory to the extent it seeks information that is a matter of public record or is as easily accessible to Plaintiff as it is to WebMD.

7.     WebMD generally objects to each interrogatory to the extent it is not reasonably limited in time or scope, and, as a result is overbroad, unduly burdensome, and oppressive.

8.     WebMD generally objects to each interrogatory to the extent it contains words and/or phrases that are vague, ambiguous, confusing, argumentative, and/or excessively broad and inclusive, and are therefore difficult or impossible to respond to.

9.     WebMD generally objects to each interrogatory to the extent it may be construed as requesting information that constitutes and/or contains trade secrets, or other confidential or proprietary information related to WebMD or others without an appropriate showing of need and/or protections.

10.     WebMD generally objects to each interrogatory to the extent it may be construed as calling for information subject to or protected by the attorney-client privilege, work product doctrine, rights of privacy, or any other lawful privilege or immunity afforded by law.

11.     The fact that WebMD has objected to any interrogatory should not be interpreted as implying that responsive information exists, that WebMD is aware of any responsive information, or that WebMD acknowledges the propriety of the interrogatory.

12.     Any and all responses set forth below are made without waiving or intending to waive, but rather preserving and intending to preserve: (a) all objections as to their competence, relevance, materiality and admissibility as evidence for any purpose; (b) the right to object on any ground to the use of such information; and (c) the right at any time to supplement the response.

## SPECIFIC OBJECTIONS

1.     WebMD objects to the definition of "PERSONALLY IDENTIFIABLE INFORMATION" as overly broad, ambiguous, and calling for a

legal conclusion to the extent that the defined term includes types of information

that courts have determined are not personally identifiable information. WebMD

will interpret the Plaintiff's term "PERSONALLY IDENTIFIABLE

INFORMATION" in the interrogatories to mean the specific examples of types of

information set forth in the definition and will refer to those types of information

collectively as "METADATA."

2.    WebMD objects to the defined terms "DEFENDANT," "YOU," or

"YOUR" as overly broad and unduly burdensome to the extent it encompasses any

person or entity other than WebMD or persons acting on its behalf.  WebMD will

interpret those terms to mean WebMD or persons acting on its behalf.

3.    WebMD objects to the defined term "Facebook" as overly broad and

unduly burdensome and ambiguous to the extent it includes unnamed affiliates,

subsidiaries, agents, successors, and assigns.  WebMD will interpret "Facebook" to

mean Meta Platforms, Inc., Facebook, Inc., or TheFacebook, Inc., and any person

that WebMD understood was acting on behalf of that entity.

4.    WebMD objects to the defined term "SUBSCRIBER(S)" as vague,

ambiguous, overly broad, and unduly burdensome, because a person who signs up

for a WebMD newsletter, does not thereby create an account with WebMD.  Rather,

there is a separate sign-up process to create an account.  WebMD will interpret

"SUBSCRIBER(S)" to mean any person who has signed up for a WebMD newsletter.

5.    WebMD objects to the defined term "VIDEO VIEWING BEHAVIOR" as overly broad and unduly burdensome to the extent it encompasses information such as "page views" that does not indicate whether someone actually watched a video on the page. WebMD will interpret "VIDEO VIEWING BEHAVIOR" as information that may identify what videos a user actually watched.

6.    WebMD objects to the defined term "Facebook Tracking Pixel" as overly broad, unduly burdensome, and vague and ambiguous to the extent it encompasses any code other than what Facebook calls the "Facebook Pixel" or, more recently, the "Meta Pixel."  WebMD will interpret the term to mean the "Facebook Pixel" or, more recently, the "Meta Pixel."

7.    WebMD objects to Rule of Construction No. 9 regarding the time period of requests as vague and ambiguous to the extent that "Relevant Time Period" is not a defined term.  WebMD will interpret "Relevant Time Period" to mean the defined term "CLASS PERIOD."

## **INTERROGATORIES**

(1)    Identify all persons with knowledge of YOUR DISCLOSURES of SUBSCRIBERS' PERSONALLY IDENTIFIABLE INFORMATION and VIDEO VIEWING BEHAVIOR.

ANSWER:  WebMD objects to the terms "YOUR," "DISCLOSURES," "SUBSCRIBERS," "PERSONALLY IDENTIFIABLE INFORMATION" and "VIDEO VIEWING BEHAVIOR" for the reasons stated in Specific Objection Nos. 1, 2, 4, 5, and 7 and will interpret those terms as stated in those Specific Objections.

WebMD objects to the request as overly broad and unduly burdensome to the extent it requests the identification of "all persons with knowledge" no matter how narrow or tangential their knowledge.  WebMD will identify the persons with the most relevant knowledge regarding the subject matter of this request.

WebMD objects to this interrogatory as vague and ambiguous, and as a legal conclusion, to the extent that it implies that WebMD disclosed subscribers' personally identifiable information or video viewing information within the meaning of the Video Privacy Protection Act.

WebMD further objects to this interrogatory to the extent it includes individuals with knowledge other than WebMD's use of the Facebook Pixel. WebMD will identify the individuals most knowledgeable about WebMD's use of the Facebook Tracking Pixel.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

Sean Mario has knowledge about WebMD's use of the Facebook Pixel. WebMD does not disclose personally identifiable information to Facebook or other third parties.

(2)    Identify each person answering, assisting, or participating in preparing the answers to the Operative Complaint, these interrogatories, and Plaintiff's First Set of Requests for Production of Documents. For each person identified, state the person's position or title, their job duties or responsibilities, and the length of time of each such person's employment.

ANSWER:  WebMD objects to this Interrogatory on the ground that the terms "job duties," and "responsibilities" are vague and ambiguous to the extent they encompass work not related to this lawsuit. WebMD will interpret these terms to mean duties and responsibilities related to the Facebook Pixel and the litigation of the instant matter.

WebMD further objects to the phrase on the ground that the phrase "length of time of each such person's employment" is vague and ambiguous. WebMD will interpret "length of time of each such person's employment" to mean the time a person worked at WebMD.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

(a) Sean Mario is Senior Vice President, Media Business at WebMD. Among his job responsibilities is managing the team who installed the Facebook Pixel on webmd.com. He has been employed by WebMD since 2006.

(b) Peter Kobsa is Group Vice President, Consumer Intelligence. Mr. Kobsa's job responsibilities include managing the team that performs analytics regarding visitors to webmd.com. Mr. Kobsa does not have knowledge regarding the Facebook Pixel. Mr. Kobsa has been employed by WebMD since 2006.

(3)    Identify all persons with knowledge of all of the purported notices YOU provided to www.webmd.com informing SUBSCRIBERS that YOU DISCLOSE their PERSONALLY IDENTIFIABLE INFORMATION and/or VIDEO VIEWING BEHAVIOR.

ANSWER: WebMD objects to the terms "YOU," "SUBSCRIBERS," "DISCLOSE," "PERSONALLY IDENTIFIABLE INFORMATION" and "VIDEO VIEWING BEHAVIOR" for the reasons stated in Specific Objection Nos. 1, 2, 4, 5, and 7 and will interpret those terms as stated in those Specific Objections.

WebMD also objects to the request as overly broad and unduly burdensome to the extent it requests the identification of "all persons with knowledge" no matter how narrow or tangential their knowledge. WebMD will identify the persons with the most relevant knowledge regarding the subject matter of this request.

WebMD objects to this interrogatory as vague and ambiguous, and as a legal conclusion, to the extent that it implies that WebMD disclosed subscribers' personally identifiable information or video viewing information within the meaning of the Video Privacy Protection Act.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

Tyler Lohse, Senior Counsel for WebMD, has knowledge of privacy and cookie notices for WebMD.

WebMD does not disclose personally identifiable information to Facebook or other third parties.

(4)    Identify all persons with knowledge of the number of individual www.webmd.com website SUBSCRIBERS who watched VIDEOS during the CLASS PERIOD.

ANSWER: WebMD objects to the term "SUBSCRIBERS" for the reasons stated in Specific Objection No. 4 and will interpret that term as stated in the Specific Objection.   WebMD will identify individuals with the most relevant knowledge regarding the number of individuals who signed up for WebMD's newsletter and watched VIDEOS in connection with said newsletter.

WebMD also objects to the request as overly broad and unduly burdensome to the extent it requests the identification of "all persons with knowledge" no

matter how narrow or tangential their knowledge.  WebMD will identify the persons with the most relevant knowledge regarding the subject matter of this request.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

To the extent data is available during the Class Period, Peter Kobsa has knowledge of the number of WebMD newsletter subscribers who watched videos on webmd.com.

(5)     Identify all categories of PERSONALLY IDENTIFIABLE INFORMATION and VIDEO VIEWING BEHAVIOR that YOU DISCLOSE to third parties.

ANSWER:  WebMD objects to the terms "YOU," DISCLOSE,"

"PERSONALLY IDENTIFIABLE INFORMATION" and "VIDEO VIEWING

BEHAVIOR" for the reasons stated in Specific Objection Nos. 1, 2, 5, and 7 and will interpret those terms as stated in those Specific Objections.

WebMD further objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent "third parties" includes parties other than Facebook. WebMD will identify categories of information relevant to the subject matter of inquiry in relation to Facebook.

WebMD objects to this interrogatory as vague and ambiguous, and as a legal conclusion, to the extent that it implies that WebMD disclosed subscribers' personally identifiable information or video viewing information within the meaning of the Video Privacy Protection Act.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

WebMD does not disclose personally identifiable information to Facebook or other third parties.

The Facebook Pixel discloses to Facebook any url visited on webmd.com. With respect to videos, prior to June 15, 2022, the Facebook Pixel also disclosed video titles, button clicks (e.g., play or pause).


(6)    Identify all persons with knowledge of the DISCLOSURE, during the CLASS PERIOD, of the PERSONALLY IDENTIFIABLE INFORMATION and/or VIDEO VIEWING BEHAVIOR of any SUBSCRIBER who visited www.webmd.com, including all persons with knowledge of any contracts and other agreements entered into between YOU and any other entity, including but not limited to data mining, marketing companies, advertising companies, and publishing companies, such as Facebook, Amazon, Google, Reddit, Twitter, TikTok, and Media.Net.

ANSWER:  WebMD objects to this Interrogatory on the ground that the

terms "DISCLOSURE," "PERSONALLY IDENTIFIABLE INFORMATION,"

"Facebook," "VIDEO VIEWING BEHAVIOR," "SUBSCRIBER," and "YOU"

are vague and ambiguous for the reasons stated in Specific Objection Nos. 1, 2, 3, 4, 5, and 7 and will interpret those terms as stated in those Specific Objections.

WebMD objects to the request as overly broad and unduly burdensome to the extent it requests the identification of "all persons with knowledge" no matter how narrow or tangential their knowledge. WebMD will identify the persons with the most relevant knowledge regarding the subject matter of this request.

WebMD further objects to this request as overly broad and unduly burdensome to the extent it includes WebMD's interactions with third parties other than Facebook. WebMD will identify the individuals with the most relevant knowledge regarding the subject matter of this request as pertaining to Facebook.

WebMD further objects to this request as overly broad and unduly burdensome to the extent it includes contracts and agreements unrelated to the Facebook Pixel. WebMD will identify the persons with the most relevant knowledge regarding contracts and agreements pertaining to the Facebook Pixel.

WebMD objects to this interrogatory as vague and ambiguous, and as a legal conclusion, to the extent that it implies that WebMD disclosed subscribers' personally identifiable information or video viewing information within the meaning of the Video Privacy Protection Act.

WebMD also objects to this Interrogatory to the extent that it is duplicative to Interrogatory 1. Both Interrogatory 1 and Interrogatory 6 request that WebMD

identify individuals with knowledge of an alleged DISCLOSURE OF

PERSONALLY IDENTIFIABLE INFORMATION and/or VIEWING

BEHAVIOR.

Subject to and without waiving the foregoing objections, WebMD responds

as follows:

WebMD does not disclose personally identifiable information to Facebook

or other third parties.

Mr. Sean Mario has knowledge about the use of the Facebook Pixel on

WebMD, including WebMD's agreement with Facebook.


(7)    Identify all persons in any way involved in the development, programming
       or implementation of any computer code on www.webmd.com that was
       obtained from – or in collaboration with – any other entity, including but not
       limited to data mining, advertising companies, advertising companies, and
       publishing companies, such as Facebook, Amazon, Google, Reddit, Twitter,
       TikTok, and Media.Net.

ANSWER:  WebMD objects to this Interrogatory as overly broad, unduly

burdensome, and disproportionate to the needs of the case to the extent the

Interrogatory requests the identity of people involved in the development,

programming, or implementation of any computer code that is not the Facebook

Pixel and to the extent it requires identification of "all persons in any way

involved." WebMD will identify individuals with the most relevant knowledge regarding the implementation of the Facebook Pixel.

WebMD further objects to this Interrogatory as overly broad and unduly burdensome to the extent it asks WebMD to identify persons involved in development, programming, or implementation of any computer code "obtained from – or in collaboration with" third parties other than Facebook. WebMD will identify persons involved with WebMD's use of the Facebook Pixel, including those who may have collaborated with Facebook to implement it.

WebMD further objects to this Interrogatory on the ground that it seeks information that constitutes and/or contains trade secrets and other confidential and proprietary information without an appropriate showing of need and/or protections.

Subject to and without waiving the foregoing objections, WebMD response as follows:

Sean Mario managed the team that implemented the Facebook Pixel and has knowledge about its use.


(8)    State the period(s) of time for which www.webmd.com utilized Facebook's software.

ANSWER:  WebMD objects to this Interrogatory on the ground that the

term "software" is vague and ambiguous. WebMD will interpret the word

"software" to mean the Facebook Pixel.

Subject to and without waiving the foregoing objections, WebMD responds

as follows:

WebMD installed the Facebook Pixel as an initial pilot program in or about

September 2015 and fully implemented the Pixel across the website in or about

2016.


(9)     State all purposes for which SUBSCRIBERS' PERSONALLY
        IDENTIFIABLE INFORMATION and VIDEO VIEWING BEHAVIOR
        was DISCLOSED and/or used after DISCLOSURE, including how you use
        the Facebook Tracking Pixel on www.webmd.com.

        ANSWER:  WebMD objects to this Interrogatory on the ground that the

terms "SUBSCRIBERS," "PERSONALLY IDENTIFIABLE INFORMATION,"

"Facebook Tracking Pixel," "VIDEO VIEWING BEHAVIOR," "DISCLOSED,"

and "DISCLOSURE" are vague and ambiguous for the reasons stated in Specific

Objection Nos. 1, 4, 5, 6, and 7 and will interpret those terms as stated in those

Specific Objections.

WebMD objects to this interrogatory as vague and ambiguous, and as a legal

conclusion, to the extent that it implies that WebMD disclosed subscribers'

16

personally identifiable information or video viewing information within the meaning of the Video Privacy Protection Act.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

The Facebook Pixel allows WebMD to send obfuscated first party data to generate and target segments within Facebook. This capability allows WebMD to serve content to Facebook users to drive them back to WebMD in support of engagement initiatives. WebMD was unaware that video event data or video names were being captured by the Facebook Pixel and did not use any such data for any purpose.

(10)  State all benefits a SUBSCRIBER receives in exchange for creating an account.

ANSWER: WebMD objects to this Interrogatory on the ground that the term "SUBSCRIBER" is vague and ambiguous for the reasons stated in Specific Objection No. 4 and will interpret this term as stated in that Specific Objection.

WebMD further objects to this Interrogatory on the ground that the phrase "creating an account" is vague and ambiguous because a person who signs up for a WebMD newsletter, does not thereby create an account with WebMD. WebMD

will interpret this phrase as meaning individuals who signed up for a WebMD newsletter.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

Individuals who enter an email address to subscribe to WebMD newsletter receive a daily email from WebMD to that email address with links to content posted on webmd.com. If a person does not open or otherwise interact with a WebMD newsletter emails for a period of six months, WebMD stops sending the newsletters to that email address.

(11)    Identify all persons with knowledge of gross and net revenues derived from YOUR DISCLOSURE of SUBSCRIBERS' PERSONALLY IDENTIFIABLE INFORMATION and VIDEO VIEWING BEHAVIOR.

ANSWER: WebMD objects to this Interrogatory on the ground that the terms "YOUR," "DISCLOSURE," "SUBSCRIBER," "PERSONALLY IDENTIFIABLE INFORMATION," and "VIDEO VIEWING BEHAVIOR" are vague and ambiguous for the reasons stated in Specific Objection Nos. 1, 2, 4, 5, and 7 and will interpret those terms as stated in those Specific Objections.

WebMD objects to the request as overly broad and unduly burdensome to the extent it requests the identification of "all persons with knowledge" no matter

how narrow or tangential their knowledge.  WebMD will identify the persons with the most relevant knowledge regarding the subject matter of this request.

WebMD further objects to this Interrogatory on the ground that it is not relevant to this case because the Video Privacy Protection Act prohibits disclosure of personal information without regard to monetization.

WebMD objects to this interrogatory as vague and ambiguous, and as a legal conclusion, to the extent that it implies that WebMD disclosed subscribers' personally identifiable information or video viewing information within the meaning of the Video Privacy Protection Act.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

Because WebMD did not use any video viewing information for targeting purposes, no such revenue exists.


(12)  State the gross profit, operating profit, net profit, and all other measures of profit used by YOU derived from YOUR DISCLOSURE of SUBSCRIBERS' PERSONALLY IDENTIFIABLE INFORMATION and VIDEO VIEWING BEHAVIOR.

ANSWER:  WebMD objects to this Interrogatory on the ground that the terms "YOU," "YOUR," "DISCLOSURE," "SUBSCRIBER," "PERSONALLY IDENTIFIABLE INFORMATION," and "VIDEO VIEWING BEHAVIOR" are

19

vague and ambiguous for the reasons stated in Specific Objection Nos. 1, 2, 4, 5, and 7 and will interpret those terms as stated in those Specific Objections.

WebMD further objects to this Interrogatory on the ground that it is not relevant to this case because the Video Privacy Protection Act prohibits disclosure of personal information without regard to monetization.

WebMD objects to this interrogatory as vague and ambiguous, and as a legal conclusion, to the extent that it implies that WebMD disclosed subscribers' personally identifiable information or video viewing information within the meaning of the Video Privacy Protection Act.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

Because WebMD did not use any video viewing information for targeting purposes, no such profit exists.

(13)   Identify all entities to which YOU DISCLOSED, during the CLASS PERIOD, the PERSONALLY IDENTIFIABLE INFORMATION and VIDEO VIEWING BEHAVIOR of PLAINTIFF.

ANSWER: WebMD objects to this Interrogatory on the ground that the terms "YOU," "DISCLOSED, "PERSONALLY IDENTIFIABLE INFORMATION," and "VIDEO VIEWING BEHAVIOR" are vague and

ambiguous for the reasons stated in Specific Objection Nos. 1, 2, 5, and 7 and will interpret those terms as stated in those Specific Objections.

WebMD further objects to this Interrogatory on the ground that it is overly broad and unduly burdensome to the extent that it requests the identity of third-party entities other than Facebook.

WebMD objects to this interrogatory as vague and ambiguous, and as a legal conclusion, to the extent that it implies that WebMD disclosed subscribers' personally identifiable information or video viewing information within the meaning of the Video Privacy Protection Act.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

Facebook received information from the Facebook Pixel installed on www.webmd.com. WebMD did not disclose any personally identifiable information to Facebook or other third parties.

(14)  State all PERSONALLY IDENTIFIABLE INFORMATION and VIDEO
       VIEWING BEHAVIOR pertaining to PLAINTIFF that YOU possess,
       including, but not limited to, such information as PLAINTIFF'S name,
       mailing address, e-mail address, IP address, keystrokes, browsing habits,
       date of birth, social security number, educational background, employment
       history, financial information, physical characteristics, ethnicity and religion.

ANSWER: WebMD objects to this Interrogatory on the ground that the terms "PERSONALLY IDENTIFIABLE INFORMATION," "VIDEO VIEWING BEHAVIOR," and "YOU" are vague and ambiguous for the reasons stated in Specific Objection Nos. 1, 2, and 5 and will interpret those terms as stated in those Specific Objections.

WebMD further objects to this Interrogatory as overly broad and unduly burdensome to the extent it requests information not transferred to Facebook by the Facebook Pixel. WebMD will provide all of Plaintiff's personal information in WebMD's possession that was transferred to Facebook by the Facebook Pixel.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

WebMD does not have any record of an accountholder named Debra Lebakken.  If Debra Lebakken signed up for WebMD's newsletter, WebMD could potentially locate information pertaining to Plaintiff using her email address. However, WebMD does not know Ms. Lebakken's email address.  If Plaintiff provides her email address, WebMD will supplement this response.

(15)   Identify all persons with knowledge of any insurance agreement under which any person carrying on an insurance business may be held liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse you for payments made to satisfy the judgment.

ANSWER: WebMD objects to the request as overly broad and unduly burdensome to the extent it requests the identification of "all persons with knowledge" no matter how narrow or tangential their knowledge. WebMD will identify the persons with the most relevant knowledge regarding the subject matter of this request.

WebMD further objects to this Interrogatory because it calls for a legal conclusion as to who can be liable for to satisfy part or all of a judgment.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

After the entry of an appropriate protective order, WebMD will produce a copy of the insurance policy encompassing this claim. The insurer, CNA Solution Insurance Agency, Inc., has knowledge of this policy.


(16)    State the name and URL of every VIDEO that has been hosted on
         www.webmd.com during the Class Period.

ANSWER: WebMD objects to this Interrogatory on the ground that it is overly broad and unduly burdensome in proportion to the limited relevance to the case.


(17)    State the name, email address, and phone number of every SUBSCRIBER
         during the Class Period.

ANSWER:  WebMD objects to this Interrogatory on the ground that the term "SUBSCRIBER" is vague and ambiguous for the reasons stated in Specific Objection No. 4 and will interpret this term as stated in that Specific Objection.

Subject to and without waiving the foregoing objections, WebMD responds as follows:

WebMD states that after the entry of an appropriate protective order, WebMD will produce a document providing the email addresses of persons who received WebMD's newsletter during the Class Period.  WebMD does not have names or phone numbers for newsletter subscribers.


**LUEDER, LARKIN & HUNTER, LLC**


By:  /s/*Jefferson M. Starr*

JEFFERSON M. STARR
*Georgia Bar No. 992352*
*Attorneys for MH Sub I, LLC/WebMD,LLC*

Zoë K. Wilhelm *(pro hac vice)*
*zoe.wilhelm@faegredrinker.com*
**Faegre Drinker Biddle & Reath LLP**
1800 Century Park East, Suite 1500
Los Angeles, CA 90067
Telephone: +1 310 203 4000
Facsimile: + 1 310 229 1285

3535 Piedmont Road NE
Building 14, Suite 205
Atlanta, Georgia 30305
Tel./Fax: (404) 480-4028
jstarr@luederlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

The Undersigned Counsel hereby certifies that the foregoing has been prepared using Times New Roman 14-Point Font, as approved in LR 5.1C.

## <u>CERTIFICATE OF SERVICE</u>

The Undersigned Counsel hereby certifies that a filing of certificate with the clerk indicating the date of service of the foregoing has been made pursuant to LR 26.3(a).

**LUEDER, LARKIN & HUNTER, LLC**

By:  <u>/s/*Jefferson M. Starr*          </u>
JEFFERSON M. STARR
Georgia Bar No. 992352
*Attorneys for MH Sub I, LLC /*
*WebMD, LLC*

3535 Piedmont Road NE
Building 14, Suite 205
Atlanta, Georgia 30305
Tel./Fax: (404) 480-4028
jstarr@luederlaw.com

26