IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LINDA M JANCIK, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO. 1:22-CV-644-TWT |
| WEBMD LLC, | |
| Defendant. | |

**OPINION AND ORDER**

This is a putative class action case. It is before the Court on Defendant WebMD LLC's ("WebMD") Motion to Strike Plaintiff Expert Report or Alternatively Grant Leave to File a Sur-Reply [Doc. 100]. For the reasons set forth below, WebMD's Motion to Strike Plaintiff's Expert Report or Alternatively Grant Leave to File a Sur-Reply [Doc. 100] is GRANTED in part and DENIED in part.

I.   **Background**

Plaintiff Jancik alleges that Defendant WebMD violated the Video Privacy Protection Act by improperly disclosing her and other putative class members' personally identifiable information. Jancik seeks four types of relief for her Video Privacy Protection Act claim: (1) declaratory judgment, (2) injunctive and equitable relief, (3) statutory damages of $2,500 for each Video Privacy Protection Act violation under 18 U.S.C. § 2710(c); and (4) attorney's fees and costs. (3d Am. Compl. ¶ 101). The facts relevant to the

present Motion are as follows.

Pending before the Court is Jancik's Motion to Certify Class [Doc. 83]. She proposes the following class (the "Class"):

> All persons in the United States who, from February 17, 2020 through the date on which class notice is disseminated, had the same email address associated with a subscription to webmd.com and a Facebook account, and for whom there is associated Event Data in the possession of Meta Platforms, Inc. showing their video-viewing behavior on webmd.com.

(Pl.'s Br. in Supp. of Mot. to Certify Class, at 11). And she alternatively proposes the following subclass (the "Subclass"):

> All persons in the United States who, from February 17, 2020 through the date on which class notice is disseminated, had the same email address associated with a newsletter subscription to webmd.com and a Facebook account, and for whom there is associated Event Data in the possession of Meta Platforms, Inc. showing their video-viewing behavior on webmd.com that was accessed through a webmd.com newsletter.

(*Id.* at 11-12). Following the filing of Jancik's reply brief in support of her class certification motion, WebMD moved to strike the expert report attached as an exhibit to that brief and not consider its opinions as part of the class certification motion [Doc. 100]. The expert report in question was submitted by Anya Verkhovskaya, purportedly in response to WebMD's expert report by James Vint. (*See generally* Reply Br. in Supp. of Pl.'s Mot. to Certify Class, Ex. 39 ("Verkhovskaya Report") [Doc. 96-9]; Resp. Br. in Opp'n to Pl.'s Mot. to Certify Class, Ex. F [1] ("Vint Report") [Doc. 111-6]). In the alternative to

---

[1] The Court notes that the docket entry for WebMD's response brief

2

striking and not considering the Verkhovskaya Report, WebMD requests leave to file a sur-reply to respond to the contentions in that report.

At a high level, the Vint Report opines on why identifying members of the Class and Subclass is not possible without individualized proof, while the Verkhovskaya Report opines in part on why it is. Specifically, the Vint Report explains that a host of "user-specific settings and configurations," including "a user's unique browser settings, device usage, or relationship . . . with Facebook" will affect whether a user is a Class and Subclass member, (Vint Report ¶ 37), making it impossible or impractical to identify the Class and Subclass without requiring various details from each potential member, (*id.* ¶ 38). The Verkhovskaya Report offers two opinions. Opinion 1 states that a "reliable and efficient method" to identify the Class and Subclass members exists whereby Meta can identify and produce—from a list of emails provided by WebMD—the relevant "Event Data" of Facebook users with those associated emails. (Verkhovskaya Report ¶¶ 70, 54–58). Opinion 2 states that a "reliable method of efficiently and effectively notifying the proposed Class and Subclass" exists. (*Id.* ¶¶ 12, 59–68).

---

[Doc. 92] is sealed, but the documents filed under that entry are, in fact, the redacted versions. The sealed, unredacted documents are contained in a separate docket entry [Doc. 111].

## II. Legal Standard

Courts need not consider an argument that is raised for the first time in a reply brief. *Riechmann v. Fla. Dep't of Corr.*, 940 F.3d 559, 579 (11th Cir. 2019) (quoting *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)). And courts have routinely disregarded arguments of this sort, based on the principle that the opposing party did not receive an opportunity to respond. *See, e.g., Presley v. United States*, 895 F.3d 1284, 1294 (11th Cir. 2018) (noting that arguments raised for the first time in a reply brief come "too late" and need not be addressed); *Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F. Supp. 3d 1295, 1301 (N.D. Ga. 2014) (disregarding arguments raised for the first time in a reply brief). However, as WebMD points out, a district court may also "in its discretion" grant leave to file a sur-reply if a "valid" reason exists, such as allowing the other party to respond to new arguments raised. *Byrd v. Gwinnett Cnty. Sch. Dist.*, 728 F. Supp. 3d 1257, 1281 (N.D. Ga. 2024) (quoting *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)); *see also United States v. Ward*, 667 F. Supp. 3d 1150, 1175 n.11 (noting that a district court may not consider the new argument unless it "giv[es] [the] opposing party an opportunity to respond"). Courts should exercise this discretion cautiously, however, because to do otherwise would require courts to "referee[ ] an endless volley of briefs." *Byrd*, 728 F. Supp. 3d at 1281 (quoting *Atlanta Fiberglass USA, LLC v. KPI, Co.*, 911 F. Supp. 2d 1247, 1262 (N.D.

Ga. 2012)).

Regarding what constitutes a proper expert rebuttal report, Rule 26(a) instructs that a rebuttal is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). A rebuttal expert report must make "a showing of facts supporting the opposite conclusion of those at which the opposing party's expert arrived in their responsive report[ ]." *AZZ, Inc. v. S. Nuclear Operating Co.*, 2023 WL 2746033, at *19 (S.D. Ga. Mar. 31, 2023) (quotation marks omitted) (quoting *Leaks v. Target Corp.*, 2015 WL 4092450, at *3 (S.D. Ga. July 6, 2015)). Moreover, "[a] report is not truly a rebuttal if it solely expands the party's case-in-chief, introduces new legal theories, or presents the same opinions previously provided." *Reese v. CSX Transp., Inc.*, 2020 WL 5740253, at *13 (S.D. Ga. Sept. 24, 2020) (citation omitted). District courts have "broad discretion in deciding what constitutes proper rebuttal evidence." *Johnson v. Petsmart, Inc.*, 2007 WL 3024029, at *2 (citing *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 601 (9th Cir. 1991)); *see also Fuller v. SunTrust Banks, Inc.*, 2019 WL 5448206, at *22 (N.D. Ga. Oct. 3, 2019) (construing "broadly" the terms "same subject matter," and noting that other courts have done the same). If a court determines that a party has violated Rule 26(a), it may under Rule 37 "exclu[de] [ ] the expert evidence 'unless the failure was substantially justified or is harmless.'" *Byrd ex rel. Byrd*

5

*v. United States*, 2021 WL 5033826, at *8 (N.D. Ga. July 19, 2021) (quoting *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019)).

## III. Discussion

While WebMD styles its motion as a motion to strike Jancik's expert rebuttal report, the Court notes that such a motion is inappropriate. Under Rule 12(f), a party may move to strike all or a portion of a "pleading" that contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An expert report is not a pleading under Rule 7(a). Fed. R. Civ. P. 7(a). That being said, the principle underlying WebMD's motion is correct. The Court will construe WebMD's motion as a motion to exclude from evidence Jancik's expert report. Ultimately, the Court grants in part and denies in part the present Motion. The Court grants the Motion with respect to excluding Opinion 2 of the Verkhovskaya Report but denies the Motion with respect to excluding Opinion 1. The Court furthermore grants the Motion with respect to allowing leave for WebMD to file a sur-reply to Jancik's class certification motion.

WebMD moves to exclude the Verkhovskaya Report on the grounds that it is a "rebuttal" report in name only—that it does not respond to the contentions presented in the Vint Report and thus is an untimely affirmative report. (Def.'s Mot. to Strike Pl.'s Expert Report, at 5). The Scheduling Order [Doc. 66] required Jancik to file her motion for class certification and

supporting expert reports by June 28, 2024, and it required her to file a reply brief and any rebuttal expert reports by September 27, 2024. WebMD also asks the Court to not consider Verkhovskaya's opinions as presented in Jancik's reply brief. (*Id.* at 2). According to WebMD, the Verkhovskaya Report "fails to address Mr. Vint's report beyond a mention in the introduction and as a document that she reviewed." (*Id.* at 5 (citing Verkhovskaya Report ¶¶ 2, 45)). WebMD states that Opinion 2 concerning notifying Class and Subclass members plainly does not respond to the opinions in the Vint Report. (*Id.* at 7). For Opinion 1, WebMD states that the Vint Report and the Verkhovskaya Report are similar in that they "in the broadest sense" concern the "ability to identify potential class members," but "that is not sufficient to distinguish [the Verkhovskaya Report] as a rebuttal report." (*Id.* at 6 (citing *Boles v. United States*, 2015 WL 1508857, at *2 (M.D.N.C. Apr. 1, 2015)). As an alternative to excluding or not considering the Verkhovskaya arguments, WebMD additionally requests leave to file a sur-reply. (*Id.* at 9).

As an initial matter, the Court agrees with WebMD that Opinion 2 of the Verkhovskaya Report does not discuss the "same subject matter" as the Vint Report and is not intended to rebut it. Opinion 2 relates solely to the ability to notify and methods of notifying proposed Class and Subclass members. (Verkhovskaya Report ¶¶ 59–68). The Vint Report does not address the subject. Thus, Verkhovskaya's opinions related to Class and Subclass

7

member notification are not appropriate for a rebuttal report, and Jancik should have included them in her Motion to Certify Class in the first instance. The Court hereby excludes Opinion 2 and will not consider any arguments in Jancik's class certification briefing that refer to Opinion 2.

Regarding Opinion 1 of the Verkhovskaya Report, the Court agrees with Jancik. Opinion 1 constitutes proper rebuttal. The Vint Report ultimately concludes that the proposed Class and Subclass members cannot be identified without individualized proof. (Vint Report ¶74). The Verkhovskaya Report clearly rebuts this conclusion by explaining why individualized proof would not be required. (Verkhovskaya Report ¶¶ 56, 58). At the heart of these experts' differing conclusions is the fact that each assumes a different method for identifying Class and Subclass members. The Verkhovskaya Report claims that Meta has previously produced and can produce in the future Event data that would allow for identification of the proposed Class and Subclass "as a whole," (Verkhovskaya Report ¶¶ 55–56), whereas the Vint Report appears to assume that Meta cannot or will not produce this data in a useable form, (*see* Vint Report ¶¶ 22, 26–27). The Court notes that the process described by Verkhovskaya appears to be the same one described by Jancik in her opening brief in support of the class certification motion. (*Compare* Br. in Supp. of Pl.'s Mot. to Certify Class, at 19–20, 16 [Doc. 83-1] (noting that Meta can be subpoenaed to provide "relevant Event Data" for any Facebook accounts

8

associated with the email addresses of WebMD's subscribers, and relying on the process used to access Plaintiff Jancik's Event data as an example of the same), *with* Verkhovskaya Report ¶ 55 ("Meta is able to take an email address and determine if there is an associated Facebook account. . . . Meta . . . can determine if there is Event Data associated with that account related to a specific website. Meta demonstrated that . . . when it produced [ ] Event Data from webmd.com associated with Plaintiff Jancik's Facebook account." (citations omitted))).

Contrary to what WebMD appears to contend, (Reply Br. in Supp. of Def.'s Mot. to Strike Pl.'s Expert Report, at 6), Jancik need not have provided a report that meticulously examines each of Vint's findings. Verkhovskaya has provided findings that critique the assumptions underlying Vint's findings and rebutted Vint's conclusion. This is a sufficient "showing of fact supporting the opposite conclusion of those at which the opposing party's expert arrived in their responsive report[ ]." *See AZZ*, 2023 WL 2746033, at *19 (quoting *Leaks*, 2015 WL 4092450, at *3). Thus, the Court concludes that the Verkhovskaya Report properly rebuts the Vint Report and meets the "same subject matter" standard under Rule 26(a). *See Johnson*, 2007 WL 3024029, at *2 (citing *Rent-A-Ctr.*, 944 F.2d at 601) (noting courts' "broad discretion" to determine what constitutes a proper expert rebuttal report); *Fuller*, 2019 WL 5448206, at *22 (noting that other courts have construed the "same subject matter"

9

standard broadly). The Court therefore denies WebMD's motion with respect to excluding Opinion 1.

Lastly and notwithstanding the above, the Court finds it appropriate to grant leave for WebMD to file a sur-reply to Jancik's class certification motion. Granting leave to file a sur-reply is a discretionary decision afforded to district courts. *Ga. Advoc. Off. v. Labat*, 2021 WL 12102897, at *1 (N.D. Ga. June 22, 2021). Although courts should be careful to avoid "an endless volley of briefs," *Byrd*, 728 F. Supp. 3d at 1281 (quoting *Atlanta Fiberglass*, 911 F. Supp. 2d at 1262), the Court finds there is a valid reason to allow a sur-reply in the instant case. Here, Jancik and WebMD clearly had different understandings of Meta's ability to support class identification—whether that is due to the complexity of the processes at play, lack of clarity in Jancik's Complaint or briefing, or otherwise. And, as a result, a number of the concerns raised by the Vint Report do not appear to be relevant under Jancik's proposed identification method. Therefore, the Court grants WebMD forty-five days from the date of this Order to file a sur-reply, with the limited purpose of rebutting the claims presented in Opinion 1 of the Verkhovskaya Report. Additionally, the Defendant may, within thirty days, depose Verkhovskaya.

## IV.   Conclusion

For the foregoing reasons, Defendant WebMD LLC's Motion to Strike Plaintiff's Expert Report or Alternatively Grant Leave to File a Sur-Reply

[Doc. 100] is GRANTED in part and DENIED in part. The Motion is granted with respect to excluding Opinion 2 of the Expert Report but denied with respect to excluding Opinion 1 of the Expert Report. The Motion is also granted with respect to allowing leave for WebMD to file a sur-reply to Plaintiff Linda M. Jancik's Motion to Certify Class [Doc. 83]. WebMD may file a sur-reply within forty-five days of the date of this Order. The Court grants the Defendant thirty days from the date of this Order to depose Verkhovskaya.

SO ORDERED, this ___10th___ day of December, 2024.

*[signature]*
THOMAS W. THRASH, JR.
United States District Judge

11