## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| LINDA M. JANCIK, individually and on behalf of all others similarly situated, |  |
| Plaintiff, | CIVIL ACTION |
| v. | CASE NO.: 1:22-cv-0644-TWT |
| WEBMD, LLC, |  |
| Defendants. |  |

## DEFENDANT WEBMD'S SUR-REPLY TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................2

    I.    The Classes Are Not Adequately Defined or Ascertainable................2

        A.    Plaintiff's Proposal to Ascertain the Class Through Use of Email Addresses is Untested and Insufficient.......................2

        B.    Plaintiff's Approach Cannot Confirm Whether Video-Viewing Information Was Received...........................................4

        C.    Plaintiff Improperly Conflates Information about Devices or Email Accounts to be the Equivalent of Individual Class Members...............................................................6

        D.    Anya Verkhovskaya's Proposed Methodology to Identify Class Members Is Unreliable and Should be Struck .................8

    II.    Plaintiff Cannot Meet her Burden to Show Numerosity....................10

    III.    Plaintiff is Not Typical of the Classes She Seeks to Represent.........11

    IV.    Individualized Issues Predominate over Common Questions. ...........12

    V.    Class Treatment is Not Superior. .....................................................13

    VI.    The Proposed Classes Do Not Satisfy Rule 23(b)(2)........................13

CONCLUSION.....................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*In re Atlas Roofing*,
    321 F.R.D. 430 (N.D. Ga. 2017) .......................................................................13

*Carroll v. SGS Auto. Servs., Inc.*,
    2020 WL 7024477 (M.D. La. Nov. 30, 2020)....................................................9

*Chapman v. Procter & Gamble Distributing, LLC*,
    766 F.3d 1296 (11th Cir. 2014) ...........................................................................8

*Cordoba v. DIRECTV*,
    942 F.3D 1259 (11th Cir. 2019) .........................................................................12

*Davis v. Capital One, N.A.*,
    2023 WL 6964051 (E.D. Va. Oct. 20, 2023)....................................................5, 9

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    317 F.R.D. 675 (N.D. Ga. 2016) .........................................................................7

*DWFII Corp. v. State Farm Mut. Auto Ins. Co.*,
    469 Fed. Appx. 762 (11th Cir. 2012)............................................................14, 15

*Gayle v. Meade*,
    614 F. Supp. 3d 1175 (S.D. Fla. 2020)..............................................................11

*In re Hulu Priv. Litig.*,
    2014 WL 2758598 (N.D. Cal. June 17, 2014)....................................................5

*Karhu v. Vital Pharms., Inc.*,
    621 Fed. App'x. 945 (11th Cir. 2015) .................................................................7

*Martinez v. D2C, LLC*,
    2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) ................................................10, 11

*Sher v. Raytheon Co.*,
    419 Fed. Appx. 887 (11th Cir. 2011)...................................................................8

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) .........................................................................10

**Statutes, Rules & Regulations**

Fed. R. Civ. P. 23(a)(1) .............................................................................11

Fed. R. Civ. P. 23(b) ................................................................................13

Fed. R. Civ. P. 23(b)(2) .....................................................................2, 13, 15

Consistent with the Court's December 10, 2024 Order (Dkt. No. 121), Defendant WebMD, LLC respectfully submits this Sur-Reply to address the remaining opinion from Plaintiff's proposed expert Anya Verkhovskaya and arguments based thereupon in Plaintiff's Reply Brief in Support of Motion for Class Certification, Dkt. Nos. 95, 96 ("Reply").

## **INTRODUCTION**

Plaintiff attempts to cure the fatal flaws highlighted in WebMD's Opposition to Plaintiff's Motion for Class Certification, Dkt. No. 92 ("Opp.") by introducing a novel, untested "methodology" for identifying class members that cannot meet her burden. Plaintiff's proffered "data analysis and class member identification" expert Anya Verkhovskaya relies on the unsupported assumption that ███████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███. Further, Plaintiff's proposal has never been applied in any other case and does not meet basic standards for reliability. Thus, Plaintiff seeks to certify a class based on an unsupportable approach to identification and with no estimate on numerosity. The same flawed methodology is used to extrapolate Plaintiff's individual experience in a failed effort to meet the elements of predominance and superiority.

The Rule 23(b)(2) class must also fail because monetary relief is the primary (not incidental) relief sought, Plaintiff cannot identify a coherent class, and Verkhovskaya confirms that all potential class members (including Plaintiff) already have the ability to block any information from being shared via the Pixel through settings at the device, browser, and/or Facebook account levels.

Thus, the Motion should be denied.

## **ARGUMENT**

Plaintiff's newly proposed method fails to meet her burden because it cannot accurately identify class members, offers no credible estimate of numerosity, and relies on baseless assumptions of predominance and superiority. The (b)(2) class seeks unnecessary relief that would not be pursued without monetary relief.

### I.    The Classes Are Not Adequately Defined or Ascertainable.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████. Each aspect is flawed in its assumptions and execution.

### A. Plaintiff's Proposal to Ascertain the Class Through Use of Email Addresses is Untested and Insufficient

████████████████████████████████████████████████

███████████████████████ (Reply, 3-4); however, WebMD is not aware of

any case where Meta provided such data on a class basis and Plaintiff's proposed expert confirmed that she is not aware of any such case either. (Ex. U, Transcript from Jan. 8, 2025 Deposition of Anya Verkhovskaya ("AV Tr.") 77:15-22.)[1]

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Thus, Plaintiff's allegation that "[t]he feasibility of this methodology has been borne out with the named Plaintiffs" (Reply, 5) is false.

Even if ███████████████████████████████████████

(which remains unknown), Plaintiff does not and cannot offer any facts regarding the burden, limitations, or process required. Verkhovskaya testified that she does not know ███████████████████████████████████████

████████████████████████████████████████

---

[1] Plaintiff's assertion that ████████████████████████ ████████████ (Reply, 3) is, at best, overstated. Meta's representative testified that ████████████████████ (Ex. V (Excerpts of Jan. 23, 2024 Deposition of Meta Platforms, Inc. in *McDaniel, et al. v. Meta Platforms, Inc.*), 221:11-18, 222:7-10.) That testimony, provided as an out-of-context excerpt is, at best, incomplete and vague as to Meta's capabilities. And Plaintiff offers nothing more.

███████████████████████████████████████████████

██ █████████ She does not know "how many different databases or manual processes may have been involved" in obtaining the information for even one consumer. (*Id.* 55:6-14.) In fact, Verkhovskaya confirmed that she has never reviewed Facebook Event Data outside her assignment in this case. (*Id.* 28:12-22.) Verkhovskaya further concedes that she is not aware of any evidence regarding: how Meta stores or uses Event Data; how long Event Data is retained; or the time and effort needed to locate Event Data for a user—including how manual or automated of a process it might be. (*Id.* 74:5-13; 76:20-77:10.) The process is a complete unknown.

### B. Plaintiff's Approach Cannot Confirm Whether Video-Viewing Information Was Received

Plaintiff suggests the Event Data is sufficient to determine whether video content was present based on an assumption about the word "video" in a URL. (Reply, 4.) Verkhovskaya "developed [her] methodology based on an assumption that the word video in the URL meant that there was video content on the web page." (AV Tr. 87:21-25.)  However, that assumption is baseless.

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████

Plaintiff proposes a ████████████████████████ that is antithetical to class certification. (*See* Opp., 11-12.) In *Davis v. Capital One, N.A.*, Verkhovskaya offered a similarly flawed proposal for class identification that the Court rejected, citing a "complicated and individualized undertaking . . . because the temporal data required to identify the class is not available for all class members." 2023 WL 6964051, at *10 (E.D. Va. Oct. 20, 2023). That court struck Verkhovskaya's identification opinion and denied certification. *Id.* at *17. The same result is warranted here.

Plaintiff relies on the potential presence of the word "video" in Event Data URLs to distinguish the court's well-reasoned decision in *In re Hulu Priv. Litig.*, 2014 WL 2758598 (N.D. Cal. June 17, 2014). (Reply, 5.) That court denied certification under similar circumstances because "cross-referencing email records" was deemed insufficient. (Opp., 12-13.) Plaintiff's reliance on an unsupported assumption about the hypothetical impact of the word "video" in a URL does not and cannot change her method to anything other than a similar cross-referencing of email records. As in *In re Hulu Priv. Litig.,* that is insufficient.

## C. Plaintiff Improperly Conflates Information about Devices or Email Accounts to be the Equivalent of Individual Class Members

Plaintiff's Motion relies on a flawed approach that equates devices with proposed class members. (Opp. 13-14; *see also* Vint Report ¶¶ 71-72.) That is unsupportable. Plaintiff's expert concedes, as she must, that "a website is tracking information at the device level, not at the individual human level." (AV Tr. 92:12-15.) Further, Verkhovskaya agreed that "multiple individual people might share one computer or other internet-enabled device . . . [and] just because you have information about a particular device visiting a website, that does not mean that you know which person was using that device to visit that website." (*Id.* 92:16-93:10.) Similarly, she confirmed that multiple people might share one email address and "so just because you have an email address associated with a particular email newsletter subscription, that does not tell you anything about what person was accessing that email address." (*Id.* 93:11-94:4.) Further, Verkhovskaya testified that multiple people may have access to the same Facebook account and, in fact, "Facebook can associate multiple email addresses with one Facebook account." (*Id.* 95:8-20.)

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████ There is nothing "automated" or "foolproof" about that improper, individualized approach. (Reply, 1, 6.) Further, Plaintiff "cannot satisfy the ascertainability requirement by proposing that class

members self-identify (such as through affidavits) without first establishing that self-identification is administratively feasible and not otherwise problematic." *Karhu v. Vital Pharms., Inc.,* 621 Fed. App'x. 945, 948 (11th Cir. 2015).

Plaintiff's own case law confirms the impropriety of her manual approach. (Reply, 6 citing *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 693 (N.D. Ga. 2016).) *In re Delta/AirTran* permitted "some review of files and submissions," to prevent defendants avoiding liability "due solely to the size of their businesses or the manner in which their business records are maintained." *Id*. But *In re Delta/AirTran* focused on records confirmed to be in the possession of the defendant, that undisputedly showed the fee at issue had been paid, and which could be cross-referenced against class members' objective payment records "such as bank or credit-card statements." *Id.* at 691-92. That is materially different from ██████ ████████████████████████████████████████████████████ ██████████████████. The Court in *In re Delta/AirTran* actually distinguished those decisions where, like here, the defendant would be asked to accept as true absent persons' declarations that they are class members. *Id.* at 692.

Thus, even if one assumes that Meta could provide Event Data for all newsletter subscribers, Plaintiff does not meet her burden of showing credible evidence regarding the appropriateness, effectiveness, or feasibility of identifying valid class members from that point.

**D. Anya Verkhovskaya's Proposed Methodology to Identify Class Members Is Unreliable and Should be Struck**

Verkhovskaya's opinion should be struck because it fails to meet the *Daubert* requirements for a reliable methodology. *Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014). Consideration of whether Verkhovskaya's opinion satisfies the *Daubert* standard is appropriate at this stage because the "expert's report or testimony is critical to class certification." *Sher v. Raytheon Co.*, 419 Fed. Appx. 887, 890 (11th Cir. 2011). The Eleventh Circuit looks to the traditional *Daubert* factors: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community." *Chapman*, 766 F.3d at 1305. Verkhovskaya's opinion on class identification fails each factor.

<u>First</u>, it is undisputed that Verkhovskaya's proposed approach is untested. She has never offered opinions in any other VPPA or pixel case (AV Tr. 14:11-19), has never previously reviewed similar data from Meta (*id.* 59:20-23), and she is not aware of any other case where similar data was analyzed in the way she proposes. (*Id.* 58:3-11.) In fact, ███████████████████████████████████ ███████████████ that of Plaintiff Jancik analyzed for this case. (*Id.* 58:16-19.) Verkhovskaya has never had an opportunity to test this methodology on a class-wide

basis and offers "a methodology for the work to be done" but not anything that she has ever actually done. (*Id.* 59:16-60:9.) In *Carroll v. SGS Auto. Servs., Inc.*, Verkhovskaya proposed a similarly novel, untested methodology for class identification that was excluded as "insufficiently reliable and of limited utility" because she had not "demonstrated that the database can be used to reliably determine anyone except [the plaintiff]." 2020 WL 7024477, at *5 (M.D. La. Nov. 30, 2020); *see also Davis*, 2023 WL 6964051, at *8 (excluding opinion because "[i]t appears that Verkhovskaya has not actually tested whether her proposed methodology reliably identifies class members").

Second, Verkhovskaya has never published any paper on her method and is not aware of any peer-reviewed papers discussing the methodology for identification that she proposes to use here. (AV Tr. 58:20-59:8.) There has been no peer review.

Third, the error rate is unknown. Verkhovskaya seeks to justify that lack of evidence by asserting "I don't see any error rate in my methodology at this time" which is "based, at least in part, on the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.* 58:12-19.)

Fourth, Verkhovskaya is unaware of anyone else applying her method. (*Id.* 58:3-11.) It is an untested proposal that has not been vetted or validated by anyone.

Verkhovskaya's opinion regarding class identification presents an untested, unreliable methodology that violates *Daubert* and should not be considered.

## II.    Plaintiff Cannot Meet her Burden to Show Numerosity.

Plaintiff seeks to establish numerosity based on the same flawed opinion and speculation, relying on an allegation that the list of WebMD newsletter subscribers are all potential class members without regard to data or injury. (Reply, 9.)

The U.S. District Court for the Southern District of Florida recently denied certification for lack of numerosity based on improper assumptions identical to those offered in the Reply. As in *Martinez v. D2C, LLC*, "[t]he bulk of the Plaintiffs' case for certification rests on their central theory that the mere presence of the Meta Pixel on [WebMD's] website resulted in the transmission of tens of thousands of [WebMD] subscribers' personally identifiable information from [WebMD] to Meta." 2024 WL 4367406, at *6 (S.D. Fla. Oct. 1, 2024); *see also* Mot. 13-14; Reply, 10-11. But as in *Martinez*, the data presented by Plaintiff "tells the Court nothing about what percentage of the [newsletter] subscribers who viewed a prerecorded video were also *logged in to* their own Facebook accounts, through the *same browser,* and on the *same device* on which they viewed that video . . . [thus,] the Plaintiff fails to supply 'the means to make a supported factual finding, that the class to be certified meets the numerosity requirement.'" 2024 WL 4367406, at *7 (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009)) (emphasis in original). The *Martinez* court denied certification observing that any

"inference of numerosity . . . without the aid of a shred of . . . evidence [would be] an exercise in sheer speculation." *Martinez*, 2024 WL 4367406, at *7.

Plaintiffs in *Martinez* sought to introduce Event Data for one plaintiff just as Plaintiff and Verkhovskaya propose to extrapolate here. *Id.* at *9. The Court found that "even assuming the new Meta event data did show that Univision disclosed Martinez's personally identifiable information in at least one instance, this only gets the Plaintiffs to *one* 'class member.'" *Id.* at *10. The Court correctly observed that identification of one potential class member, without any additional data to show others, "amounts to 'mere speculation as to the number of parties involved and general allegations of numerosity,' which 'are insufficient to satisfy Rule 23(a)(1).'" *Id.* (quoting *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1196 (S.D. Fla. 2020).) The same flaw is fatal to Plaintiff's Motion. (*See* Opp. 16-18.) It is undisputed that

███████████████████████████████████████████████████████

███ (AV. Tr. 82:14-18.) Thus, Plaintiff fails to meet her burden on numerosity.

### III.    Plaintiff is Not Typical of the Classes She Seeks to Represent.

The unavailability of Facebook IDs for other potential class members undermines Plaintiff's and Verkhovskaya's assertion that Meta's production of Plaintiff's data demonstrates her typicality. (Reply, 7-9.) ███████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

██  Plaintiff is atypical.

## IV.    Individualized Issues Predominate over Common Questions.

WebMD's argument that individualized proofs are required to establish class membership (Opp. 21-23) is bolstered by the Reply and Verkhovskaya's opinion,

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

After holding up *Cordoba v. DIRECTV* as the controlling precedent (Mot., 17), Plaintiff now tries to distinguish it by arguing the Eleventh Circuit reversed certification "because it necessarily included members who did not sustain an injury." (Reply, 13-15, citing 942 F.3d 1259 (11th Cir. 2019).) But Plaintiff invites that same error. ████████████████████████████████████████████ cannot, as Plaintiff suggests, be completed in a "mechanical" way. (Reply, 14.) Individual questions predominate.

## V.    Class Treatment is Not Superior.

Plaintiff relies on the same "methodology" to propose the superiority of class treatment based on the unsupported, conclusory statement that "[c]lass membership can easily be determined in a classwide manner." (*Id.*) But Plaintiff's personal claim

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████. (*See, supra*, Sections I(A)-I(C).) Neither Plaintiff nor Verkhovskaya offer any mechanism for extrapolation or application of that personalized approach to a class of unknown size. As this Court stated in *In re Atlas Roofing*, "[b]ased on the number of individual issues discussed above, adjudicating these claims on a class-wide basis will likely present a manageability problem. There will be numerous fact-intensive individual inquiries" that warrant finding "that Rule 23(b)'s superiority requirement is not satisfied." 321 F.R.D. 430, 446 (N.D. Ga. 2017).

## VI.    The Proposed Classes Do Not Satisfy Rule 23(b)(2).

Plaintiff argues that the statutory damages available under the VPPA make monetary damages incidental. (Reply, 15.) Plaintiff does not, because she cannot rebut the undisputed fact that consumers have the ability to control what, if any, information is shared via the Pixel through personalized settings at the device or browser level, as well as within their own Facebook accounts. (Opp. 24-25.)

Verkhovskaya confirmed that users have "an ability to modify privacy settings on individual Facebook accounts," and that "individual device users have the ability to modify their privacy settings at the browser or device level." (AV Tr. 91:14-92:5.) Despite that, Plaintiff asks the Court to order that WebMD "will no longer share Plaintiff's and class members' video-viewing behavior on webmd.com with third parties." (Reply, 15, n. 8.) But if Plaintiff wants to prevent her information from being shared by WebMD (or any other website owner) via the Pixel, she can effectuate that result. (Opp. 21-22.) That control for the class means that any injunctive relief is, at best, unnecessary and, at worst, against the interest of those putative class members that have consented (whether through act or omission) to have their information shared via the Pixel. (Opp. 24-25.) For the same reasons, Plaintiff's Reply does not offer any argument that a reasonable plaintiff would bring this lawsuit absent monetary relief.

The Reply's lone citation in support of the proposed injunctive class is *DWFII Corp. v. State Farm Mut. Auto Ins. Co.* (Reply, 15), where the Eleventh Circuit denied certification of the (b)(2) class. 469 Fed. Appx. 762, 765 (11th Cir. 2012). The court there described incidental damages as "more in the nature of a group remedy" without individual differences amongst potential class members. *Id.* There, as here, the proposed class required too many individualized questions as to whether putative class members have an actual claim. In *DWFII Corp.*, it was the need for

prospective class members to establish that they provided medical services and amounts reimbursed by the insurer (*id.*), while here, Verkhovskaya proposes class identification would be based on ███████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████. (AV Tr. 91:8-11, 95:8-14.) Thus, Plaintiff's proposed class identification "methodology" undermines her burden under Rule 23(b)(2) of showing that monetary damages are incidental or that a viable injunction could or should be granted as to a potential (unknown, overbroad, and ill-defined) class of consumers.

## <u>CONCLUSION</u>

For the reasons stated herein, and in the Opposition to Plaintiff's Motion, WebMD respectfully requests that the Court deny Plaintiff's Motion for Class Certification.

Respectfully submitted,

Dated:  January 24, 2025

*/s/     Paul A. Rosenthal*
Paul A. Rosenthal (*pro hac vice*)
*paul.rosenthal@faegredrinker.com*
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Tel.: 973-549-7000
Fax: 973-360-9831

Zoë K. Wilhelm (*pro hac vice*)
Joie C. Hand (*pro hac vice*)
*zoe.wilhelm@faegredrinker.com*
*joie.hand@faegredrinker.com*
1800 Century Park East, Suite 1500
Los Angeles, CA 90067
Tel.: 310-203-4000
Fax: 310-229-1285

Jefferson M. Starr (GA Bar No. 992352)
jstarr@luederlaw.com
**LUEDER, LARKIN & HUNTER, LLC**
3348 Peachtree Rd., NE
Suite 1050
Atlanta, Georgia 30326
Tel./Fax: (404) 480-4028

*Counsel for Defendant WebMD, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

The Undersigned Counsel hereby certifies that the foregoing has been prepared using Times New Roman 14-Point Font, as approved in LR 5.1C.


## <u>CERTIFICATE OF SERVICE</u>

The Undersigned Counsel hereby certifies that a filing of certificate with the clerk indicating the date of service of the foregoing has been made pursuant to LR 26.3(a).


**LUEDER, LARKIN & HUNTER, LLC**

By:   */s/ Jefferson M. Starr*
        Jefferson M. Starr (Bar No. 992352)

1